# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

VANCE CARTER GREEN                                                                            PLAINTIFF

v.                                                    CIVIL ACTION NO. 5:18-CV-P6-GNS

JEFFERY JOHNSON *et al.*                                                DEFENDANTS

## MEMORANDUM OPINION

This is a *pro se* civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff Vance Carter Green leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the action will be dismissed.

## I. SUMMARY OF COMPLAINT

Plaintiff is incarcerated at Fulton County Detention Center (FCDC). He names four FCDC employees as Defendants in this action – Chief Deputy #1 Jeffery Johnson, in both his official and individual capacities; and Deputies Jim Eakes, Jamie Alexander, and DeAndre Harmon, in their official capacities only.

In the complaint, Plaintiff alleges that Defendants Eakes, Alexander, and Harmon placed him in segregation and subjected him to an "unlawful strip search" on July 20, 2017, "without an incident report." Plaintiff states that he was released from isolation on August 28, 2017. He writes: "39 days were spent in segregation with no proof or investigation done on the allegations made by an outside civilian party. Who was found to not have made the phone call on the night of July 20, 2017. Another person made the call." Plaintiff continues:

> No E.P.O. violated, no cell phone found to be used. I was placed in seg. for 39 days, lost my job which earned me credit for goodtime for early release. Also missed chance to complete M.R.T. which was another 90 days goodtime gain. Had proper procedure been followed none of this would have taken place.

Plaintiff has attached to his complaint the four inmate "memoranda" that he filed as a result of the allegations set forth above. The first was filed on July 26, 2017, and states: "I'd like to know when I can go back to cell 221 and resume my normal routine." In the staff comment section, it is written: "When you give me the cell phone I will think about it." The second memorandum was filed by Plaintiff on July 28, 2017, and states:

> There is no cell phone for me to give you. I had someone I know from the street text her for me because I wanted to call our son for my birthday. What happened from there . . . I get accused of having a cell phone. If you will allow me to show you how vindictive this woman is you will know she is only using you as a pawn to cause me grief. I can you show you she's a liar. I've lost my job and miss my chance at MRT because of this. I ask that you allow me to prove my side.

The staff comments section of the memorandum states: "The problem with this statement is we have other proof of her story. I suggest you think long & hard & then tell us the truth." Plaintiff filed the third memoranda on August 8, 2017. He states: "I request protective custody from general population and FCDC staff alike for the duration of my stay here at FCDC." In response, a staff member has written: "PC from what – you texted someone from a cell phone – jail staff didn't do that." Finally, in Plaintiff's fourth memoranda, which Plaintiff filed on September 4, 2017, he writes: "I need the incident report from 20-July-17 approx. 8 p.m. concerning the call from dispatch stating that [someone] called saying I violated an EPO by calling her from a cell phone." The staff comments section states: "I don't see an incident report on 7/20/17."

Plaintiff concludes his complaint by stating "I believe this violates my civil rights as cruel and unusual punishment, unlawful imprisonment, & also subjected to unlawful strip search on camera."

As relief, Plaintiff seeks compensatory and punitive damages.

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its

legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a § 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. Strip Search

Plaintiff first claims that he was subjected to an "unlawful strip search." The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. While inmates retain some limited Fourth Amendment rights upon commitment to a correctional facility, those rights have to be balanced with the significant and legitimate security interests of the prison. *See Bell v. Wolfish*, 441 U.S. 520, 560 (1979) (finding that visual body-cavity searches of pretrial detainees were reasonable). A strip search, therefore, will survive a Fourth Amendment challenge so long as it is reasonable. *Id*.

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the

particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Bell*, 441 U.S. at 559. The Fourth Amendment does not prohibit the search of an inmate's person, so long as the search is reasonable in scope, manner, and location; is reasonably related to a valid penological goal; and is not performed for a wrongful purpose, such as to humiliate or degrade a prisoner. *Id*.

Both the complaint and the attached exhibits suggest that Plaintiff was strip searched because jail officials received information that he had a cell phone in his possession. Thus, the strip search appears to have been conducted in an effort to maintain or restore, *i.e.*, retrieve contraband in the form of a cell phone, rather to maliciously or sadistically cause harm. The Court, therefore, concludes that Plaintiff has not alleged sufficient facts to state a claim for relief under the Fourth Amendment. *See, e.g.*, *Caruso v. Johnson*, No. 1:15-cv-00780-EPG (PC), 2017 U.S LEXIS 14938, at *10-11 (E.D. Cal. Feb. 1, 2017) (finding no Fourth Amendment claim based upon "unclothed body search" because the search was conducted to find contraband, *i.e.*, a cell phone and a plastic of bag of drugs, after a jail official saw the plaintiff put something down the back of her shorts).

**B. Segregation**

Plaintiff also claims that his rights were violated because he was placed in segregation for 39 days even though "no proof or investigation done on the allegations made by an outside civilian party. Who was found to not have made the phone call on the night of July 20, 2017. Another person made the call."

### 1. Eighth Amendment

Plaintiff claims that his placement in segregation constituted cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id*. Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981)); *see also Jones v. Waller*, No. 98-5739, 1999 U.S. App. LEXIS 8734, at *4 (6th Cir. May 4, 1999). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Thus, the Court finds that Plaintiff fails to state a claim under the Eighth Amendment based upon his placement in segregation.

### 2. Fourteenth Amendment

Plaintiff might alternatively be claiming that he was deprived of liberty without due process when he was placed in segregation. However, the Due Process Clause of the Fourteenth

Amendment does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Generally, courts consider the nature *and* duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d at 795-96 (6th Cir. 2008). Here, the Court finds that Plaintiff's 39 days assignment to segregation does not state constitute an "atypical and significant" hardship warranting the protections of due process. *See*, *e.g.*, *Sandin*, 515 U.S. at 484 (holding that disciplinary segregation for 30 days did not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (holding that 61 days in segregation is not atypical and significant).

However, it is also true that a restraint which "inevitably affect[s] the duration of [an inmate's] sentence" creates a liberty interest. *Sandin v. Conner*, 515 U.S. at 487. Here, Plaintiff claims that his placement in segregation resulted in the loss of "good time credit." Because the loss of earned good-time credits affects the length of Plaintiff's sentence, Plaintiff has a protected liberty interest in this regard. *Id*. at 477-78 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). This claim, however, is barred by the *Heck* doctrine. In *Heck v. Humphrey*, the Supreme Court held that a state prisoner may not file a § 1983 suit for damages or equitable

relief challenging his conviction or sentence, unless the challenged confinement has been remedied by some other process, if a ruling on his claim would render the conviction or sentence invalid. 512 U.S. 477, 486-87 (1994). In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison disciplinary proceedings. The court held that if an inmate's allegations would "necessarily imply the invalidity of the punishment imposed," the claim is not cognizable in a civil action under § 1983. *Id.* at 648. Furthermore, in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82, (2005), the Supreme Court re-emphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id*. at 81-82. Thus, the Court concludes that Plaintiff's claim based upon the loss of good-time credits due to placement in segregation must be dismissed because he has not shown that the decision to place him in segregation has been invalidated.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's complaint will be dismissed by separate Order.

Date: January 31, 2018

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Defendants
     Fulton County Attorney
4416.011

8